UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Capital Equity Land Trust No. 2140215,** | **Case No. 22-02580** |
| Debtor. | Honorable Jacqueline P. Cox, United States Bankruptcy Judge |

### AMENDED MEMORANDUM OPINION GRANTING
### COOK COUNTY LAND BANK AUTHORITY'S MOTION TO DISMISS

Before the Court is the Motion to Dismiss Chapter 11 Case of Debtor-Capital Equity Land

Trust No. 2140215 ("Capital Equity") pursuant to 11 U.S.C. §§ 109(d), 1112(b) (Docket No. 19)

filed by County of Cook *d/b/a* the Cook County Land Bank Authority ("CCLBA") on June 8, 2022

(the "Motion"), the Response filed by Capital Equity on July 26, 2022 (the "Response"), and the

Reply filed by CCLBA on August 15, 2022 (Docket No. 27) (the "Reply).  In the Motion, CCLBA

argues that Capital Equity's chapter 11 case must be dismissed because Illinois land trusts are not

eligible for relief under title 11, the United States Code (the "Bankruptcy Code" or "Code") and that

it did not file the above-captioned case in good faith.  The Motion will be granted for the reasons set

forth herein.

### I. Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  The dispute over

Capital Equity's eligibility is a core proceeding under 28 U.S.C. § 157(b)(2)(A), a matter concerning

the administration of the bankruptcy estate.  Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409.

### II. Background

Capital Equity is a land trust that was established on October 22, 2015.  Exhibit, Trust

Agreement (the "Agreement"), Bankruptcy Docket No. 33.  The Agreement provides that Monty S.

Boatright is its Trustee and that he shall take title to the property at 17100 Halsted Street, Harvey, IL 60426, Property Identification Numbers 29-29-206-202 [sic]-0000 and 29-29-206-024-0000 (the "PINs"). *Id.* It appears that First Premier Funding, LLC ("FPF, LLC") is the beneficiary, as it is the entity "entitled to the earnings, avails and proceeds of said real estate . . ." *Id.*

After Capital Equity defaulted on paying its property taxes, the property held in the land trust was sold pre-petition to Cook County d/b/a CCLBA via a scavenger sale. CCLBA was subsequently given tax deeds for the property. Adversary Proceeding 22-00037, Docket No. 1, ¶ 8; *see, e.g.,* Amended Motion to Dismiss Adversary Proceeding, Adv. Docket No. 22-00037, Docket No. 11, p. 2; *see also* Order Directing Issuance of Tax Deed, *County of Cook v. Capital Equity Land Tr., No. 2140215,* 2020 COTD 001369 (Ill. Cir. Ct. Oct. 21, 2021) (tax sale of PIN 29-29-206-024-0000; Order Directing Issuance of Tax Deed, *County of Cook v. Capital Equity Land Tr., No. 2140215,* 2020 COTD 00132 (Ill. Cir. Ct. Oct. 21, 2021) (tax sale of PIN 29-29-206-020-0000). *Id.,* Orders, Exhibit, pp. 4-5; 14-15.

Capital Equity filed for chapter 11 bankruptcy relief on March 7, 2022. Bankruptcy Docket No. 1. The next day, Capital Equity filed Adversary Proceeding 22-00037 against CCLBA, seeking to avoid the transfer of the subject property to Cook County via the tax sale. Adversary Docket No. 1, ¶¶ 2, 12-18 (citing 11 U.S.C. §§ 548(a)(1)(B), 551).

Capital Equity has appealed the Circuit Court Orders directing the issuance of the tax deeds with regard to the subject property, which is a single parcel extending over two PINs. Amended Motion to Dismiss the Adversary Complaint, Adversary Docket No. 11, p. 2 (citing Order Granting Motion to Consolidate Appeals, Nos. 1-21-1512, 1-21-1511).

### III. Discussion

The salient issues before the Court are (1) whether Capital Equity is eligible to seek bankruptcy relief; and (2) whether Capital Equity filed the above-captioned case in good faith. This bankruptcy case will be dismissed on each ground.

### A. Cause to Dismiss Chapter 11 Case

Section 1112(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, a bankruptcy court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). The Bankruptcy Code employs a non-exhaustive list of what constitutes cause to dismiss a chapter 11 case. 11 U.S.C. § § 1112(b)(4). *OneUnited Bank v. Charles St. African Methodist Episcopal Church of Bos.*, 501 B.R. 1, 7 (D. Mass. 2013). "One such cause is the ineligibility of the entity for debtor status." *See, e.g., Id.* (denying a motion to dismiss for cause based on debtor ineligibility where the bankruptcy court concluded the debtor was a corporation eligible for bankruptcy relief; the district court affirmed); *see also In re Dille Family Tr.*, 598 B.R. 179, 203 (Bankr. W.D. Pa. 2019) (granting a motion to dismiss a chapter 11 case for cause concluding that a family trust was ineligible to be a debtor pursuant to § 109); *In re Constitutional Tr. No. 2-562*, 114 B.R. 627, 633 (Bankr. D. Minn. 1990) (granting the United States Trustee's motion to dismiss for cause due to the debtor's ineligibility under § 109, finding that the debtor failed to meet statutory requirements of Minnesota business trust law).

The lack of good faith in filing a voluntary petition may also constitute cause for dismissal. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009) (dismissing case where the debtor had no unsecured creditors and had been created in an attempt to frustrate a judgment creditor's

-3-

collection efforts; in addition, the debtor filed for bankruptcy relief after receiving title to its major assets from an affiliated entity).

The Court will first address Capital Equity's eligibility for bankruptcy relief and then discuss whether its chapter 11 case was filed in good faith.

### B. Cause Under 11 U.S.C. § 109(d)

As an initial matter, "[t]he term debtor means person or municipality concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). For whom may be a debtor, § 109 of the Bankruptcy Code lays out the relevant ground rules. 11 U.S.C. § 109. First, only a person or municipality may be a debtor under the Code. 11 U.S.C. § 109(a). Second, "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title . . . ." *Id.* Third, "[o]nly a . . . person that may be a debtor under chapter 7 of this title . . . may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d). A person includes an "individual, partnership, and corporation, but does not include governmental unit . . ." 11 U.S.C. § 101(41). The definition of "corporation" —

(A) includes—
(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;
(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
(iii) joint-stock company;
(iv) unincorporated company or association; or
(v) *business trust*; but
(B) does not include limited partnership.

11 U.S.C. § 101(9)(A-B) (emphasis added).

Capital Equity claims that it is an eligible debtor because it once owned a "commercial piece of property . . . which owed real estate taxes" but CCLBA argues otherwise. Transcript of August

-4-

30, 2022 Hearing, p. 5:23-25. A business trust qualifies as a corporation under the Code and is generally eligible to seek bankruptcy protection. *In re Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. 673, 675 (Bankr. C.D. Cal. 1995) ("'Business trusts,'" however, may file bankruptcy petitions, because they are expressly included within the statutory definition of 'corporation' set forth in § 101(9)(A)(v)."); *Cutler v. 65 Security Plan*, 831 F. Supp. 1008, 1014 (E.D.N.Y. 1993) ("'Business trusts' can be debtors in bankruptcy. Such trusts are eligible because Congress recognized their similarity to corporations") (citations omitted). "The legislative history underlying the Bankruptcy Code's definition of 'corporation' makes clear that, except for a 'business trust,' a trust is not a 'person' eligible for bankruptcy relief." *In re Gurney's Inn Corp. Liquidating Tr.*, 215 B.R. 659, 660 (Bankr. E.D.N.Y. 1997) (citing *In re Medallion Realty Tr.*, 103 B.R. 8, 10 (Bankr. D. Mass. 1989), *aff'd*, 120 B.R. 245 (D. Mass. 1990) ("except for a 'business trust' a trust is not a 'person' eligible for relief. Both the House and Senate Committee Reports state: '[t]he definition [of 'person'] does not include an estate or a trust . . . .' H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 313 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 25 (1978), U.S. Code Cong. & Admin. News (1978), pp. 5787, 5810, 6270")). "Thus, a debtor, created as a trust, to be eligible to file a bankruptcy petition must qualify as a business trust. If the debtor is not a business trust, then it is not eligible to file a bankruptcy petition." *In re Gulfcoast Irrevocable Tr.*, 2012 WL 6005716, at *2 (Bankr. D.P.R. Nov. 30, 2012). This dispute requires the Court to consider whether Capital Equity is a business trust.

## IV. Illinois law Interpreting Land Trusts

A district judge in *BA Mortgage and Intern. Realty Corp. v. American Nat. Bank and Tr. Co. of Chicago*, 706 F. Supp. 1364 (N.D. Ill. 1989) explained that:

[Defendants]are the beneficiaries of what was originally a phenomenon unique to

-5-

Illinois law: the land trust. Ill. Rev. Stat. Ch. 110, ¶ 15-1205 has codified, for purposes of the new Illinois Mortgage Foreclosure Law, the case law development of that concept:

> "Land trust" means any trust arrangement under which the legal and equitable title to real estate is held by a trustee, the interest of the beneficiary of the trust is personal property and the beneficiary or any person designated in writing by the beneficiary has (i) the exclusive power to direct or control the trustee in dealing with the title to the trust property, (ii) the exclusive control of the management, operation, renting and selling of the trust property and (iii) the exclusive right to the earnings, avails and proceeds of the trust property.

*Id.* at 1369-70 (citations omitted).

The district court further noted the judicial treatment of the vehicle:

The owner of the beneficial interest in a land trust is accorded four basic powers: (1) to possess, manage and physically control the real estate; (2) to receive all income generated by the property; (3) to direct the trustee in dealing with title to the real estate; and (4) to receive the proceeds of any sale of the property made pursuant to the power of direction.

*Id.* (citation omitted).

Capital Equity was formed to hold title to the real property in issue. Under Illinois law, the property is the beneficiary's personal property. In land trust situations, the beneficiary is considered the equitable owner of the real property and, as found by the Seventh Circuit in the *Matter of Gladstone Glen*, was, therefore, eligible to be a debtor under the Bankruptcy Act, the Bankruptcy Code's predecessor. *Matter of Gladstone Glen*, 628 F.2d 1015, 1018-19 (7th Cir. 1980). The Seventh Circuit noted that under Illinois law, a land trust beneficiary possessed neither legal nor equitable title to the realty; the beneficiary was regarded as owning only a personal property interest in the proceeds of the trust res. However, the Court of Appeals was not limited to the contours of Illinois law. The Court noted that the Illinois land trust "serves as a useful vehicle in real estate

transactions for maintaining the secrecy of ownership and allowing ease of transfer" (citation omitted). *Id.*, at 1018. The Court also noted that "true ownership lies with the beneficiaries though title lies with the trustee. The trustee derives all of his power from the beneficiary and acts solely on the beneficiary's behalf." *Id.*

Because the beneficiary was the owner of the res in the economic sense, the Seventh Circuit looked to the substance of the matter. In doing so, the Seventh Circuit held that the beneficiary of a land trust was an owner eligible to pursue bankruptcy relief within the meaning of § 406(6) of the Bankruptcy Act. *Id.* at 1019.

Under the Agreement herein, the Trustee has no duty to manage or control Capital Equity or its rent proceeds, to enforce its leases, or to pay taxes except as provided therein. The Trustee was to incur no personal liability for any claim for anything it did; any such liability was waived. Contracts could be entered into in the name of the beneficiary or the Trustee, but not individually. The Trustee was authorized, in return for compensation, to execute deeds, mortgages, and otherwise deal with the legal title of the property when authorized by the beneficiary. Agreement, Article 8, p.3.

In the case before the Court, the beneficiary's interest consists solely of the power of direction to deal with the title and to manage and control the property. It also had the right to receive the property's proceeds. Agreement, Article 1. The problem for Capital Equity is that its beneficiary is not seeking bankruptcy relief; the land trust, Capital Equity, is the debtor, not the beneficiary, First Premier Funding, LLC, the entity entitled to the land trust's profits and proceeds. Agreement, p. 1.

### V. Dismissal Standards

Generally, a party seeking dismissal of a case has the burden of proof. *In re Charles St.*

*African Methodist Episcopal Church of Bos.*, 478 B.R. at 83. That Court noted that "when an entity is considered a corporation under state law, it must enjoy a presumption of being a corporation for purposes of § 109 and the Bankruptcy Code, and the burden of proof is on the party asserting that its characteristics somehow disqualify it from being a § 109 corporation." Nevertheless, debtors generally bear the burden of establishing that they are eligible for relief under § 109 of the Bankruptcy Code. *In re Visicon S'holders Tr.*, 478 B.R. 292, 307 (Bankr. S.D. Ohio 2012) (determining the burden is on the debtor to establish eligibility); *In re Gen. Growth Props., Inc.*, 409 B.R. 43, 70 (Bankr. S.D.N.Y. 2009) ("The question is whether the Debtors have met their burden of proof of establishing that . . . was eligible to file because it operates as a business trust.").

There is consensus among courts that no uniform standard exists to define a business trust for a debtor's eligibility under § 109(a). *In re Dille Family Tr.*, 598 B.R., at 191–92 (Bankr. W.D. Pa. 2019). Although some courts determined that an entity is a business trust based on state law, it is better to assess business trust eligibility for bankruptcy as a matter of federal law. *Cutler*, 831 F. Supp. at 1:

> Whether an entity is eligible for relief under title 11 of the United States Code is purely a matter of federal law. To hold otherwise would result in different results in different states, and an entity would be eligible for relief in one state but not in another. This is not what Congress intended when it enacted Article I, § 8, Cl. 4 of the Constitution, which provides that "Congress shall have the power . . . to establish . . . uniform laws on the subject of bankruptcies'"

(quoting *In re Arehart*, 52 B.R. 308, 310-11 (Bankr. M.D. Fla. 1985)).

In *In re Dille Family Tr.*, 598 B.R. at 192, the Court noted that when the United States Supreme Court has declared that when Congress utilizes in the Bankruptcy Code a term of art with an established meaning, Congress meant to "incorporate the general common law" of the "dominant

-8-

consensus of common-law jurisdictions, rather than the law of any particular State" (citing *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995)); *In re Kenneth Allen Knight Tr.*, 303 F.3d 671, 679 (6th Cir. 2002) (concluding that "the definition of 'business trust' properly belongs to federal, rather than state, law"); *In re Sung Soo Rim Irrevocable Intervivos Tr.*, 177 B.R. at 676 (calling the "availability of access to the federal bankruptcy courts and the availability of bankruptcy relief itself are ultimately questions of federal, not state, law"). However, "a trust's failure to qualify as a 'business trust' under state law may be evidence of the settlor's intent that the trust does not operate as a business trust." *In re Dille Family Tr.*, 598 B.R. at 192 (citing *In re St. Augustine Tr.*, 109 B.R. 494, 496 (Bankr. N.D. Fla. 1990)).

Congress enacted the Bankruptcy Code—a federal law—and § 101(9) of the Bankruptcy Code contains the phrase business trust. Therefore, the Court must determine whether Capital Equity is eligible to seek protection as a business trust under the Bankruptcy Code. To accomplish this task, the Court must apply federal law and standard principles of statutory interpretation when deciding what the term business trust means. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (engaging in classic statutory interpretation exercise to determine the meaning of three words and phrases in the Bankruptcy Code); *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 128, n.2 (2015) (applying ordinary rules of statutory interpretation of word "services" in Bankruptcy Code).

Deciding whether Capital Equity is a business trust under § 101(9) does not require the Court to create a new substantive federal rule of decision or to engage in judicial lawmaking. Instead of creating new federal common law, the Court is called upon to construe a phrase used by Congress in the part of the Bankruptcy Code which sets forth the requirements for bankruptcy

eligibility.

## A. Determination of Eligibility is Moored to the Petition Date

What is the appropriate date or time for the court to consider when determining Capital Equity's status as a business trust? Several courts have stated that the relevant date for deciding eligibility under § 109 of the Bankruptcy Code is the petition date. *TD Bank, N.A. v. Landry*, 479 B.R. 1, 7 (D. Mass. 2012) (explaining that "[t]he beginning of the bankruptcy case is the logical point to establish (to the extent reasonably possible) the debtor's and creditor's rights"); *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 201 (Bankr. D. Del. 2015) (finding the relevant date for deciding the "place of business" eligibility requirement under § 109(a) is the petition date). Indeed, the "fundamental principle of bankruptcy law" is that the petition date is "a key date for the determination of both debtors' and creditors' rights." *In re Rivers*, 466 B.R. 558, 566 (Bankr. M.D. Fla. 2012).

Capital Equity suggested at the August 30, 2022, hearing that entities that can conduct business activities are business trusts: "[i]f a trust can undertake some business or commercial activity for the benefit of beneficiaries in an enterprise, it qualifies as a business trust . . ." citing *In re Cooper Property Liquidating Tr.*, 61 B.R. 531, 536 (Bankr. W.D. Tenn. 1986). *See* August 30, 2022 Transcript, pp.5-6. The *Cooper* Court held that a liquidating trust was a business trust. That ruling does not help Capital Equity; it has not alleged that it is a liquidating trust. Capital Equity says in its response that if Capital Equity had possession of the property, it would be in the process of marketing it for tenants. Response, Docket No. 25, p. 5. Capital Equity does not allege that it is conducting business activities or that it has conducted business activities in the past; it says that it will do so in the future, speculating about what could happen if it regains the property. When should

-10-

qualifying business activity occur? Since bankruptcy rights are determined as of a case's filing date, the Debtor's business activity should precede the filing date. There is no evidence that Capital Equity engaged in business before it filed this bankruptcy case. This supports this Court's ruling in section VII of this Opinion, *infra,* that this case was filed as a litigation tactic to delay creditor CCLBA's efforts, without a likely chance that it would or could reorganize in a reasonable period of time.

We know from Capital Equity's Statement of Financial Affairs that it had no gross revenue (from business or non-business sources) in the fiscal year before it filed this case, which could be a calendar year. Capital Equity was instructed to identify its fiscal year's beginning and end dates, which could be a calendar year. Capital Equity did not identify the beginning or end of a relevant period. Statement of Financial Affairs, Docket No. 12.

### B. Defining Business Trust Pursuant to § 109 of the Bankruptcy Code

Although there is consensus that federal law should govern the determination of trust eligibility, a standard definition of the term business trust remains elusive. As the Honorable James Queenan observed, "[t]he decisions are sharply, and perhaps hopelessly divided[.]" *In re Medallion Realty Tr.,* 103 B.R. at 10. Although that observation was made in 1989, it remains true today, as various courts have formulated different tests, although "nearly all courts look to the underlying trust instrument for guidance." *In re Dille Family Tr.,* 598 B.R. at 192 (citing *Cutler,* 831 F. Supp. at 1015).

The Court now embarks on a review of the relevant history of business trusts. There is no precedent from the Supreme Court or the Seventh Circuit construing the phrase business trust in the context of § 101(9) of the Bankruptcy Code. However, the Supreme Court has explained in detail

-11-

the meaning of the term as a general matter.

Analysis of the phrase business trust in federal case law confirms that the term initially came into vogue shortly after appearing in legal articles and books in the first third of the twentieth century. The first reported federal judicial decision utilizing the term business trust is *Little Four Oil & Gas Co. v. Lewellyn*, 35 F.2d 149, 150 (3d Cir. 1929). In *Lewellyn*, the Third Circuit drew a clear distinction between two classes of trusts:

> One, where the trustees merely collect dividends or interest, or rentals and distribute them among the shareholders—a simple common law trust similar in legal effect and in exemption from certain taxation to a trust under a will where the trustee merely collects income and distributes it among beneficiaries; the other, where a trust is organized or declared for business purposes and the trustees carry on an active business for profit, regarded as a plain unincorporated joint-stock association and liable for taxes at the corporation rate.

Regarding the second type of trust, the Third Circuit noted that:

> The real test is whether the shareholders or trustees, or both combined, carry on business for profit, and, if they do, they constitute a business trust—in legal effect an association or a joint-stock company—with liability for taxes.

*Id.*

Although it may be the first reported federal opinion to use the term business trust, the *Lewellyn* Court relied on an earlier Supreme Court decision, *Hecht v. Malley*, 265 U.S. 144, 146-47 (1924), which concerned a "Massachusetts Trust," and described it as:

> a form of business organization, common in that State, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided.

*Hecht*, 265 U.S. at 146-47 (footnote omitted). Effectively, the *Lewellyn* Court used the phrase business trust as a new shorthand for the longer and more detailed description of the Massachusetts

-12-

trust in *Hecht*. Thereafter, Justice Blackmun, in dissent, characterized the *Hecht* formulation as the classic definition of the Massachusetts business trust. *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 467-68 (1980).

As further explained below, these early federal judicial decisions are consistent to a remarkable degree. In any event, the Supreme Court issued the seminal decision on business trusts almost a decade later in a tax dispute, *Morrissey v. Comm'r of Internal Revenue*, 296 U.S. 344 (1935). In *Morrissey*, the Supreme Court first identified the purpose of business trusts:

> In what are called 'business trusts', the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management, and sale of properties; or dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise.

*Id.* at 357. The Supreme Court then identified the attributes of business trusts by reference to corporations:

> What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise, who act in much the same manner as directors, may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of

-13-

corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of personal liability of participants to the property embarked in the undertaking.

*Id.* at 359.

Just a decade before the enactment of the Bankruptcy Code, a Colorado federal court confirmed that the Massachusetts trust and the business trust were synonymous and then relied on the *Morrissey* holding for the proposition that "[t]he difference between an association or business trust and an ordinary trust is so well established that it hardly needs to be documented . . . ." *Rippey v. Denver U.S. Nat'l Bank*, 260 F. Supp. 704, 714 (D. Colo. 1966).

In *Nat'l City Bank v. Fidelco Growth Inv.*, 446 F. Supp. 124, 127, n.3 (E.D. Penn. 1978), the Court relied on the *Hecht* and *Morrissey* decisions as dispositive definitions of business trust in a federal diversity jurisdiction dispute, dismissing the characterization of *Morrissey* as "an old tax decision" and concluding that "the *Morrissey* analysis is no less pertinent to this case [a non-tax dispute] for having been enunciated in 'an old tax decision.'" Nothing about the purpose of the Bankruptcy Code and its eligibility provisions suggests that some alternative or different definition should be used in the bankruptcy context.

Having analyzed the meaning of the term business trust as articulated by the United States Supreme Court in *Hecht*, 265 U.S. at 146-47, and *Morrissey*, 296 U.S. at 357-39, and employed by several federal courts in business disputes (*i.e.*, taxation, securities, and federal diversity jurisdiction matters) the Court rules that the phrase used by Congress in 1978 in § 109 reflects the Supreme

-14-

Court's definition of business trusts.  In sum, the salient features noted by the Supreme Court in

defining a business trust are:

(1)    a trust created and maintained for a business purpose;
(2)    title to property held by trustees;
(3)    centralized management;
(4)    continuity uninterrupted by death among beneficial owners;
(5)    transferability of interests; and
(6)    limited liability.

*Morrissey*, 296 U.S. at 357-59; *Navarro*, 446 U.S. at 467-68.

### C. Case Law Defining a "Business Trust" under the Bankruptcy Code

The Court is aware that since the enactment of the Bankruptcy Code, other courts have

discussed whether entities are business trusts under § 101(9) of the Bankruptcy Code; some deviate

from *Morrissey*.  The disparate findings have produced a lack of uniform case law defining business

trusts.  According to one bankruptcy court considering the topic decades ago, "[t]he decisions are

sharply, and perhaps hopelessly, divided on the meaning of 'business trust.'" *In re Medallion Realty*

*Tr.*, 103 B.R. at 10.

### 1. Split of Authority

Although the United States Supreme Court has not directly addressed the interpretation of

the phrase business trust in the context of debtor eligibility status under the Code, three courts of

appeals have spoken on the subject.  In *Mosby v. Boatmen's Bank of St. Louis County (In re Mosby)*,

the Eighth Circuit Court of Appeals endorsed a district court opinion deciding that the

"distinguishing characteristics of a business trust" are those listed in the Supreme Court's *Morrissey*

decision.  791 F.2d 628 (Mem), *1(8th Cir. 1986) (affirming opinion in *Mosby*, 61 B.R. 636, 638

(E.D. Mo. 1985)).  A decade later, the Second Circuit Court of Appeals weighed in on the issue.  *In*

-15-

*Shawmut Bank Connecticut v. First Fidelity Bank (In re Secured Equip. Tr. of Eastern Air Lines, Inc.)*, 38 F.3d 86 (2d Cir. 1994). In addressing whether a trust before it qualified as a business trust, the Second Circuit held that a trust created to facilitate aircraft financing for Eastern Airlines did not qualify as a business trust under § 101(9)(A)(v) of the Bankruptcy Code and, therefore, could not be a debtor. The Court hearing the *Eastern Air Lines* matter was faced with a trust that had entered into a Secured Equipment Indenture and Lease Agreement, the lessee being Eastern Airlines. The trust then sold $500,000,000.00 in trust certificates to investors and used the proceeds to purchase a portion of Eastern Airlines' fleet of aircraft. The aircrafts were leased back to Eastern Airlines in exchange for rental payments equaling the amount of the principal, premium, and interest on the certificates. Under the lease agreement, Eastern Airlines was entitled to a return of any rental payments exceeding the amounts owed to the certificate holders under the trust indenture. The lease agreement also stated that, upon full payment of the lease obligations, title to the leased aircrafts would be reconveyed to Eastern Airlines.

The Second Circuit found "no dispute that [the lease transaction] was a secured financing." *Id.* at 87. After Eastern Airlines filed a chapter 11 bankruptcy petition, holders of a portion of the trust certificates filed an involuntary chapter 11 petition against the trust. The Second Circuit, noting that it was deciding an issue of first impression, held that the trust was not a business trust within the meaning of the Bankruptcy Code because it was not created to generate a profit or transact business; it existed solely to preserve and protect the security interest of the certificate holders in the assets of the trust (*i.e.*, the aircraft collateral) and to facilitate the secured financing transaction sought by Eastern Airlines. In dissent, Circuit Judge Amalya Kearse, believing that the trust qualified as a business trust under New York law, argued that the certificate holders "expected to

-16-

earn a profitable return on their investment" and that the "trust [was] not [your] typical trust for the

simple preservation of assets," and, therefore, should be deemed a business trust within the meaning

of § 101(9)(A)(v) of the Bankruptcy Code. *Id.* at 91-92.

Notably, the Second Circuit observed that:

> Although no court has thus far adopted a clear definition of business trust for
> purposes of the [Code], courts have looked to see whether the trust at issue has the
> attributes of a corporation. . . . Courts have noted a variety of factors in making this
> determination, but there is no definitive list of characteristics that constitute a
> business trust.

*Shawmut Bank*, 38 F.3d at 89 (citations omitted).

Three years thereafter, the Sixth Circuit Court of Appeals joined in on the business trust saga

in the matter of *Brady v. Schilling (In re Knight Tr.)*, 121 F.3d 708 (6th Cir. 1997) (hereinafter

"*Knight Trust I*"), a decision which preceded the 2002 *Knight Trust II* decision (below). The *Knight*

*Trust I* Court was similarly confronted with the issue of whether a debtor trust qualified as a business

debtor under the Bankruptcy Code. Its decision articulated an approach that has been dubbed the

primary purpose test. More specifically, the *Knight Trust I* Circuit Court, on appeal after remand,

explicated its approach to the issue with the notion that:

> [T]rusts created with the primary purpose of transacting business or carrying on
> commercial activity for the benefit of investors qualify as business trusts, while trusts
> designed merely to preserve the trust res for beneficiaries generally are not business
> trusts.

*Knight Tr. I*, 121 F.3d, at *4; *see, e.g., Knight Tr. II*, 303 F.3d 671, 680 (endorsing the primary

purpose test, explaining that the determination is fact-specific).

### 2. Eligibility of Land Trusts in the Seventh Circuit

Turning to Illinois land trusts, aside from *Matter of Gladstone Glen*, mentioned above at

Section IV several Illinois cases have analyzed the applicability of the Bankruptcy Code to land trusts and have held that land trusts are not debtors under the Bankruptcy Code. *See In re Dolton Lodge Tr. No. 35188*, 22 B.R. 918, 923 (Bankr. N.D. Ill. 1982); *In re North Shore Nat'l Bank of Chicago, Land Tr. No. 362*, 17 B.R. 867, 869-70 (Bankr. N.D. Ill. 1982); *In re Citizen Bank & Tr. Co. of Park Ridge*, 8 B.R. 812, 815-16 (Bankr. N.D. Ill. 1981); *In re Old Second Nat' Bank*, 7 B.R. 37, 38 (Bankr. N.D. Ill. 1980).

In *In re North Shore Nat'l Bank of Chicago, Land Trust, No. 362* the Court held that an Illinois land trust was not a business trust and thus not a person under § 109 eligible for bankruptcy protection. The *North Shore* Court observed that an Illinois land trust is not, and does not attempt to be, an active business or commercial entity; it is merely a legal device whose primary function is to hold legal and equitable title to real estate. The Court reviewed the language of the definitions sections of the Bankruptcy Code to support the conclusion that land trusts were not meant to enjoy the right to reorganize their debtors. The Court stated the inclusion of the term trust in the definition of entity in § 101(14)(now § 101(15)) and its inclusion only when qualified as a business trust in § 101(8)(A)(v)(now § 101(9)(A)(v)) demonstrated that Congress was aware of the distinction between functioning business entities and mere devices which hold title to real estate. The Court found the debtor had not demonstrated that Congress meant to include the type of instrument in issue there in an expanded reading of the term debtor under the Bankruptcy Code.

In *In re Dolton Lodge Tr. No. 35188* the Court held that an Illinois land trust was not a proper chapter 11 debtor under § 109, where the trust merely held title to a commercial lodge but was not a business enterprise.

In *In re Citizens Bank & Tr. Co. of Park Ridge* the Court held that an Illinois land trust was

-18-

not a business trust and thus not a person under § 109 eligible for bankruptcy protection.

In *In re Old Second Nat. Bank of Aurora* the Court held that a bankruptcy petitioner, which was merely a land trust, the primary purpose of which was limited to holding title to real property, exhibited none of the characteristics of a business trust and thus was not eligible to be a debtor under the Bankruptcy Code.

Bankruptcy courts in Florida have also held that land trusts are not debtors under the Bankruptcy Code. *See In re Treasure Island Land Tr.*, 2 B.R. 332, 336 (N.D. Fla. 1980); *In re Cohen*, 4 B.R. 201, 208 (N.D. Fla. 1980).

The primary purpose of a land trust is to hold title to real property, not to operate a business or commercial activity for profit. As a result, a land trust does not conduct a business activity capable of being reorganized under the Bankruptcy Code.

Aside from ownership of the real property, there is no evidence that Capital Equity has engaged in business activity. There is no evidence that Capital Equity ever received any income from business activities after it was formed. Its Statement of Financial Affairs states that it had neither business income nor non-business income. Statement of Financial Affairs, Bankruptcy Case, Docket 12. Since the Debtor has provided no information about income, there is no evidence of business profits (or losses). Since a business trust is supposed to "provide a medium for the conduct of a business and sharing its gains," the lack of any attempt to earn income and realize gains suggests that Capital Equity is not a business trust. *Morrissey*, 296 U.S. at 357. Capital Equity does not appear to have any income. Its most significant asset, the real estate sold via a tax deed, no longer belongs to it. There is scant evidence that Capital Equity intends to engage in business activities; the Response to the Motion to Dismiss states that "[o]nce possession is returned to the

-19-

Debtor, it will lease the units within the property and generate revenue." Capital Equity's Response, Docket No. 25. This demonstrates an intent to do something in the future, not that something has been done as of the relevant filing date. That pleading also states that "the Debtor is the entity that holds title to the property for the benefit of its beneficiaries." *Id.* That is not true; it does not hold title; deeds have been issued transferring title to CCLBA.

### VI. Cause Warranting Dismissal-Eligibility

The Court finds that Debtor Capital Equity is not a business trust under § 109(d) of the Bankruptcy Code. Because Capital Equity is a land trust, not a business trust, it is not eligible to be a chapter 11 debtor. This chapter 11 case will be dismissed.

### VII. Cause Warranting Dismissal -Lack of Good Faith

CCLBA argues that aside from the eligibility issue, this chapter 11 case was not filed in good faith and is, therefore, independently subject to dismissal under § 1112(b) of the Bankruptcy Code.

### A. Legal Standards

Lack of good faith may constitute cause for dismissal under § 1112(b) of the Bankruptcy Code (*see, e.g., In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009) (citations omitted); *In re Madison Hotel Assocs.*, 749 F.2d 410, 426 (7th Cir.1984).

### 1. Use of Bankruptcy as a Litigation Tactic

"Whether a chapter 11 case should be dismissed . . . depends on "what is in the best interest of creditors and the estate" (11 U.S.C. § 1112(b)(1)). *See also In re Aurora Memory Care, LLC*, 589 B.R. 631 (Bankr. N.D. Ill. 2018)). In making such a determination, bankruptcy courts have developed a host of factors that, if present, are indicia of bad faith:

1.      The debtor has few or no unsecured creditors;

-20-

2.     There has been a previous bankruptcy petition by the debtor or a related entity;
3.     The pre-petition conduct of the debtor has been improper;
4.     The petition effectively allows the debtor to evade court orders;
5.     There are few debts to non-moving creditors;
6.     The petition was filed on the eve of foreclosure;
7.     The foreclosed property is the sole or major asset of the debtor;
8.     The debtor has no ongoing business or employees;
9.     There is no possibility of reorganization;
10.    The debtor's income is not sufficient to operate;
11.    There was no pressure from non-moving creditors;
12.    Reorganization essentially involves the resolution of a two-party dispute;
13.    A corporate debtor was formed and received title to its major assets immediately before the petition; and
14.    The debtor filed solely to create the automatic stay.

*In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986) (citations omitted).

In addition, "[o]ne of the hallmarks of bad faith in filing a petition is pre-petition litigation already pending in the state court between the parties." *In re Tekena USA, LLC*, 419 B.R. at 346. This case was filed in response to the state court tax sale proceeding. It is a litigation tactic being used as the Debtor appeals the orders adverse to it. In *In re Posner* the Seventh Circuit noted in the context of a motion to lift the automatic stay that "[f]iling bankruptcy to circumvent pending litigation is an indication of bad faith." *In re Posner*, 610 B.R. 586, 591 (7th Cir. 2019).

Capital Equity has essentially parked itself in bankruptcy to await resolution of an appeal; it is not now pursuing bankruptcy goals, i.e., liquidating or reorganizing.

No one factor is determinative of good faith; the Court "must examine the facts and circumstances of each case in light of several established guidelines or indicia, essentially conducting an 'on-the-spot evaluation of the Debtor's financial condition [and] motives.'" *In re Kingston Square*, 214 B.R. at 725 (citations omitted). "It is the totality of

circumstances, rather than any single factor, that will determine whether good faith exists."
*Id.* (citations omitted). Case law recognizes that a bankruptcy petition should be dismissed
for lack of good faith with "great care and caution." *Carolin Corp. v. Miller*, 886 F.2d 693,
700 (4th Cir.1989).

### 2. Inability to Reorganize

Capital Equity has failed to indicate that it has income to fund a reorganization plan.
It said that once it regains the property, it will lease it. Capital Equity can not now earn
income to fund a plan. In addition, Capital Equity indicated in its pleading that it intended
to file a plan within seven days of filing the Response: "(Debtor intends to file the plan
within 7 days of filing this response)." Docket No. 25, p. 9. No plan has been filed to date.
Capital Equity filed this bankruptcy case after it failed to prevail in its efforts to contest the
tax sale, reflecting the *Tekena* factor of pre-filing litigation pending in state court. The Court
is convinced that Capital Equity is not likely able to reorganize in a reasonable amount of
time. This bankruptcy case was filed as a litigation tactic, evidenced by Capital Equity's
failure to file a plan and its speculative position that it will lease the premises if it succeeds
in regaining title.

### VIII. Cause Exists to Warrant Dismissal of Chapter 11 Case

Based upon the totality of the circumstances, the Court finds that Capital Equity did
not file this bankruptcy case in good faith. Accordingly, this case will be dismissed for that
reason, too.

### IX. Conclusion

Considering the arguments of counsel and the complete record of this bankruptcy

case, the Court determines that dismissal provides the most equitable relief to all parties in interest. The record fails to demonstrate Capital Equity's eligibility for bankruptcy relief or that its case was filed in good faith. Because Capital Equity is not eligible to file for bankruptcy relief and has no assets, conversion is not warranted; dismissal is the appropriate remedy.

Cook County Land Bank Authority's Motion to Dismiss Chapter 11 Case will be granted.

The above-captioned bankruptcy case of Capital Equity Land Trust No. 2140215 will be dismissed because Capital Equity is not a business trust. This case will also be dismissed for cause as it was not filed in good faith.

This Amended Memorandum Opinion represents the Court's findings of fact and conclusions of law.

The dismissal order entered on November 9, 2022 in the bankruptcy case stands.

The dismissal order entered on November 9, 2022 in Adversary Proceeding 22-00037 stands.

Dated: **November 17, 2022**     By the Court: _____

**Honorable Jacqueline P. Cox,**
**United States Bankruptcy Judge**